***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications.
 ***********
The Full Commission finds as fact and concludes as law the following, which were entered into by the parties as
 STIPULATIONS
1. That all parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff at all relevant times herein.
3. Employer-Defendant was a duly qualified self-insured on August 26, 2000.
4. Plaintiff's average weekly wages will be determined from a Form 22 submitted by defendants.
5. Plaintiff's medical records were received into evidence after the hearing before the deputy commissioner and were entered into the record.
6. The issues to be determined by the Commission are as follows:
 a) Whether plaintiff sustained an injury by accident while in the course and scope of employment with defendant-employer?
 b) If so, what, if any, benefits is plaintiff entitled to receive under the North Carolina Workers Compensation Act?
c) Whether plaintiff gave proper notice of his claim?
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was a 58 year-old male. Plaintiff has a high school education along with approximately two years of college. He served sixteen years in the United States Air Force (four active, twelve reserve), and two years in the Army. Plaintiff received significant postgraduate training while in the military. His employment history consists of work as a salesman, and director of food services at Manor House in Pinehurst.
2. Plaintiff sustained an injury by accident in 1999 while employed by Manor House. While shopping for food for the residents at Food Lion, plaintiff slipped and fell on a pair of scissors, injuring his back. Plaintiff slammed into a counter when he fell, causing injury to his shoulders and side.
3. Although Manor House originally denied plaintiff's workers' compensation claim, it eventually provided medical care after a Request for Hearing was filed. Plaintiff was diagnosed with a myofascial strain. He experienced significant pain as a result of his injury, describing it to Dr. Parikh, his treating physician, as 5-8/10 on a ten-point scale. Plaintiff took Motrin to manage his pain, but this practice was stopped by his urologist, causing plaintiff to switch to Darvocet.
4. Plaintiff filed a workers' compensation claim associated with his 1999 injury. Plaintiff settled his claim against Manor House and now pursues a claim against employer-defendant herein.
5. Plaintiff became employed by defendant on or about June 12, 2000, as a supervisor in the kitchen. His responsibilities included "supervising the staff." On or about August 26, 2000, plaintiff slipped on the floor, but did not fall to the ground. Plaintiff was unsure whether he slipped on something or whether he simply slipped. He reported the incident to Phil Walsh, his supervisor.
6. Plaintiff did not seek any medical treatment on August 26, 2000. Instead, per his testimony he simply went home.
7. Plaintiff left his employment with defendant on or about August 29, 2000. He presented a letter of resignation to the hospital on or about August 29, 2000, in which he indicated he was leaving due to health problems related to his prior employment with Manor House.
8. Plaintiff did not seek any medical treatment until March 2001. He presented to employer-defendant's emergency room in March 2001 with complaints of high blood pressure, and allegedly received a diagnosis of a "bad back."
9. There was no specific treatment recommended for plaintiff in March 2001 other than pain medication, which plaintiff was already taking prior to August 26, 2000. Plaintiff indicated the emergency room referred him to a physician (whose name he could not recall), who would not see him because he was a workers' compensation patient.
10. Plaintiff eventually presented for treatment at the Veteran's Hospital. He indicated he presents to the hospital every four months. Plaintiff has been treated for high blood pressure, cholesterol problems, and appendicitis over the last few years.
11. Plaintiff indicated a physician's assistant at Cape Fear Valley (whose name he could not remember) said that plaintiff's condition was work-related. He indicated the VA Hospital said it was evident that a "slip" caused his low back pain. However, these statements were not corroborated by the medical records.
12. Plaintiff produced no documentation that would indicate he has ever been taken out of work, either by anyone at employer-defendant or the VA Hospital. He indicated no one has recommended surgery, and that he simply continues to take pain medication as he did prior to August 26, 2000.
13. Todd Lockamy, Defendant's Safety Inspector, was responsible for contacting employees who allege on-the-job injuries in the hospital to discuss their claims and see if they have any safety concerns. He contacted plaintiff upon receiving the incident report of plaintiff's alleged injury. Plaintiff told him that he slipped on some water, but did not fall. Plaintiff claimed defendant was not responsible for his injury, and that his condition was due to an old back injury.
14. While the evidence is sufficient to show that plaintiff slipped on August 26, 2000, there is no evidence that plaintiff sustained any injury at that time. Plaintiff's slip appears to have been a relatively minor event, and there was no indication that he sustained an injury. Plaintiff did not seek medical treatment for nearly seven months after August 26, 2000, and the medical evidence submitted does not provide any basis for attributing plaintiff's complaints to the August 26, 2000.
15. There is no medical evidence to indicate plaintiff is or has been disabled from working. There is no medical note taking plaintiff out of work. Additionally, plaintiff is well educated, articulate, and possesses obvious transferable skills useful in the competitive marketplace.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission reaches the following
 CONCLUSIONS OF LAW
1. Plaintiff has not proven that he sustained a compensable injury by accident on or about August 26, 2000, while in the course and scope of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Even if the Full Commission accepts plaintiff's contention that defendant is estopped to deny the compensability of this claim by virtue of its failure to issue a Form 61 within 90 days, plaintiff has still failed to show entitlement to benefits pursuant to the Workers' Compensation Act. There is no evidence to show that plaintiff's complaints regarding his back are related to the August 26, 2000 incident as opposed to his 1999 injury. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff has not presented evidence sufficient to support a finding that he is or has been disabled from working as a result of the incident of August 26, 2000. N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following
 ORDER
1. Plaintiff's claim must under the law be and is hereby DENIED.
2. Each side shall pay its own costs.
This the 8th day of September 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER